UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

GARY LEE SEYMOUR,

    Plaintiff,

v.                                             Case No. 5:20-cv-214-TKW-MJF

MARK S. INCH,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This prisoner case, filed under Title II of the Americans with Disabilities Act of 1990 ("ADA"), and the Rehabilitation Act of 1973 ("RA"), is before the court upon Plaintiff Gary Lee Seymour's "Motion for Temporary Restraining Order and Preliminary Injunction." (Doc. 6). Defendant Mark S. Inch, Secretary of the Florida Department of Corrections ("FDC"), has responded in opposition to the motion. (Docs. 23, 25). For the reasons set forth below, the undersigned recommends that Plaintiff's motion for a preliminary injunction be denied.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters and motions for injunctive relief. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Seymour is a Florida prisoner proceeding *pro se*. Seymour initiated this lawsuit one year ago, by filing a complaint against FDC Secretary Mark Inch in his official capacity. Seymour claims that prison officials are discriminating against him in violation of the ADA and the RA by providing him adult—instead of pediatric—diapers for his bowel incontinence. (Doc. 1).

One month after filing his complaint, Seymour filed this motion for a preliminary injunction to force the FDC to provide him pediatric diapers. (Doc. 6). Seymour's motion for a preliminary injunction incorporates the allegations of his complaint, (*Id*. at 1), which are set forth below.

### A.      Allegations of Seymour's Complaint and Motion for a Preliminary Injunction

Seymour is a paraplegic with bowel incontinence. (Doc. 1 at 5, ¶ 3). Prior to entering the prison system, Seymour "receiv[ed] pediatric diapers as a treatment reg[i]men for bowel incontinence." (*Id*.). When Seymour entered the FDC in February 2014, medical staff at the Central Florida Reception Center continued to provide him with pediatric diapers (Pampers Cruisers size 6). (*Id*. ¶ 4). In March 2014, Seymour was transferred to Gulf CI where he was provided Huggies Little Movers size 5 for approximately one year. (*Id*. ¶ 5). Medical staff then switched him to adult diapers. (*Id*. ¶ 5). The adult diapers were too large and leaked fecal matter onto his bedding and clothing. (*Id*.)

In April 2019, while confined at Suwannee CI, Seymour received Huggies Snug 'n Dry size 6 diapers. (*Id*. ¶ 8). Later, at Century CI, Seymour was provided Pampers. (*Id*. ¶ 10).

In June 2020, Seymour was transferred from Century CI to the Northwest Florida Reception Center ("NWFRC"). (*Id*. ¶ 10). A security prison official at NWFRC confiscated a box of Pampers Seymour had stored in his personal property. (*Id*.). Medical staff at NWFRC provided Seymour with adult diapers, but Seymour alleges that adult diapers are too large for his frame and cause feces to leak onto his bedding and clothing. (*Id*. ¶ 6). The resulting odor "causes plaintiff to frequently miss chow and has been told to leave the law library, chapel." (*Id*. ¶ 9). In addition, according to Seymour, "the ill-fitting adult diapers and the leakage of fecal matter" cause "periodic and reoccurring open sores" which, if infected, could put him "in a life threatening situation." (*Id*. ¶¶ 6-7).

Seymour filed this lawsuit on August 17, 2020, claiming that pediatric diapers are necessary to avoid discrimination against him on the basis of his disability. (*Id*. at 1 ¶ 1, 8). As relief, Seymour seeks declaratory and injunctive relief ("providing the accommodations listed herein"), and damages in the amount of $275,000.00. (*Id*. at 8).

Seymour's motion for a preliminary injunction claims that Secretary Inch "continues to knowingly allow his staff to discriminate against plaintiff by denying the requested ADA accommodations, pediatric diapers." (Doc. 6 at 1 ¶ 3). Seymour

alleges that he "has reasonable cause to belief [sic] that he is in danger of recurring sores that could put him in imminent danger of death." (*Id*. ¶ 4). Seymour seeks to enjoin prison officials from "denying the pediatric diapers plaintiff needs for bowel incontinence and prevent recurring open sores." (*Id*. at 2).

On January 26, 2021, Seymour was transferred to the Reception and Medical Center ("RMC"), which remains his current address. (Doc. 9).

**B.     Secretary Inch's Response to Seymour's Motion for a Preliminary Injunction**

Secretary Inch opposes Seymour's motion for a preliminary injunction. (Docs. 23, 25). The Secretary offers a declaration from Kellie Caswell, RN, BSN, along with 39 pages of Seymour's prison medical records. (Doc. 23, Ex. A (Caswell Decl.); Doc. 25, Ex. A (Medical Records)).

Caswell is Legal Nurse Consultant for the FDC's Office of Health Services. (Doc. 23, Caswell Decl. ¶ 1). Caswell reviewed Seymour's medical records and concludes that there presently is not, nor has there ever been, a documented medical reason for Seymour to need pediatric diapers. (*Id*. ¶ 9). Caswell observes that Seymour is being provided a disposable brief appropriate for his weight and size. (*Id*. ¶¶ 7-9). Caswell also concludes that Seymour does not face a threat of serious harm if he is not provided pediatric diapers. (*Id*. ¶ 10). In that regard, she observes that Seymour developed a "sore" only once, which was a pressure ulcer from not

repositioning himself, and that it was treated effectively. Caswell's declaration and Seymour's prison medical records show the following. (*Id*.).

Seymour is paraplegic. (Doc. 23, Caswell Decl. ¶ 5; Doc. 25, Ex. A). He is incontinent of feces and has an ileal conduit which diverts urine into a bag/pouch. (Doc. 23, Caswell Decl. ¶ 6; Doc. 25, Ex. A). Seymour is 5'10" tall and weighs 116 pounds. (Doc. 25, Ex. A at 4). He does not have a medical pass for disposable briefs/diapers. (Doc. 23, Caswell Decl. ¶ 6). He is provided a disposable brief/diaper as needed. (*Id*. ¶¶ 6, 8). The disposable brief is an adult brief with a tape closure, size small, for waist size 22"–36". (*Id*. ¶ 8). According to the weight range on a Huggies package, a size 6 pediatric diaper generally has a weight range of approximately 35 pounds, and a size 5 has a weight range of 27 pounds. (*Id*. ¶ 7).

Seymour's medical history of diaper use includes the following. The FDC took custody of Seymour on February 19, 2014. (Doc. 25, Ex. A at 3). On August 14, 2014, Seymour weighed 138 pounds, and his weight dropped to 133 pounds by September 14, 2014. (Doc. 25, Ex. A at 38).

On September 15, 2014, Seymour's medical chart was referred to a clinician after officers discovered, during a property search, that Seymour was hoarding diapers. He had 36 Huggies diapers, 3 unopened packages of youth diapers, and 1 package of opened youth diapers. (*Id*. at 38). On September 17, 2014, the ARNP concluded that Seymour "clearly [was] not using them on a daily basis," discontinued Seymour's medical pass for a supply of diapers and wipes, and ordered

that Seymour follow up at sick call to obtain those items when needed. (*Id*. at 37; *see also id.* at 3). The ARNP directed that at sick call, any diapers and wipes should be supplied "on a daily 1-1 basis (i.e., come to infirmary; clean self; get new diaper; leave soiled one in the infirmary)." (*Id*.).

On December 7, 2014, Seymour submitted an Inmate Sick Call Request at Gulf CI, stating that he needed "youth tape-on diapers" instead of "pull-ups." (Doc. 25, Ex. A at 36). On December 9, 2014, the ARNP evaluated Seymour and concluded that there was no medical indication for not using the pull-up-style diaper available at the institution. (*Id*. at 35). The ARNP ordered that Seymour be issued one package of diapers per week, and counseled him on hoarding. (*Id*.).

Seymour was transferred to NWFRC on January 29, 2015. (*Id*. at 34). On February 2, 2015, the RN assessed Seymour's medical passes and issued him passes for adult disposable briefs (size XXSM) and wipes. (*Id*.). On March 8, 2015, Seymour appeared at the medical department supply window and stated "I need my Huggies diapers with Mickey Mouse on them." (*Id*. at 33). The nurse observed that there were no pediatric diapers in the supply closet and that Seymour's medical pass did not authorize pediatric diapers. (*Id*.). The nurse measured Seymour's waist to confirm his size. At that time, his waist measured 28.25 inches and his hips measured 32 inches. (*Id*.). The nurse noted that Seymour was not wearing any type of brief/diaper/underwear at the time, and that although he reported having sores in the past, he had no skin breakdown or wounds. (*Id*.). Seymour complained that he

needed "baby diapers because of the gap under legs allow leakage so I need size 5 diapers only." (*Id*.) The nurse explained to Seymour that she only could offer him what was in the supply closet, and that the smallest disposable brief available was an adjustable adult brief for waist size 20"-32". (*Id*.). Seymour refused the disposable briefs and noted that he would use the pediatric diapers in his property until the matter was resolved. (*Id*. at 32-33).

On March 22, 2015, while confined at NWFRC, Seymour appeared at the medical supply window and stated that he had a pass for diapers. (*Id*. at 31). The nurse instructed Seymour to get the pass and return to the window. (*Id*.). Seymour did not return to the supply window. (*Id*.). On May 31, 2015, Seymour was offered disposable adult briefs, but refused them. (*Id*. at 30). Seymour's waist measurement on January 21, 2016, was 29". (Doc. 23, Caswell Decl. ¶ 8).

On January 18, 2018, while confined at NWFRC, Seymour was issued one adult disposable brief, size small, and five baby wipes. (Doc. 25, Ex. A at 22-24). The nurse noted that Seymour was scheduled for a follow-up appointment with a doctor on January 19, 2018, to address his hoarding of medical supplies. (*Id*.). In that regard, the nurse noted that staff found 64 small adult briefs and 5 infant diapers (among a large number of other medical supplies) in Seymour's property. (*Id*.).

On June 27, 2018, Seymour reported to sick call at NWFRC, where he requested smaller diapers due to leakage. An RN noted that she would consult with

an ADA nurse and the supply room for availability of an extra small-sized disposable brief. (*Id*. at 21). There is no documentation concerning the availability of that item.

As mentioned above, Caswell states that Seymour currently is housed at RMC where he is being provided size small adult diapers with a tape closure. The diaper fits a waist size of 22"-36". (Doc. 23, Caswell Decl. ¶ 8). Caswell opines that this size is appropriate given Seymour's last weight and measurement. (*Id*. ¶ 9). Caswell also observers that there is not a documented medical reason for Seymour to need pediatric diapers. (*Id*.).

Concerning sores, Caswell reviewed Seymour's medical records and observes that Seymour has had multiple wound assessments with no wounds detected. (Doc. 23, Caswell Decl. ¶ 10; *see also* Doc. 25, Ex. A). Caswell also observes that it is documented many times that Seymour is able to change positions and turn himself when in bed or in a chair to avoid pressure ulcers. (*Id*.). On February 19, 2021, Seymour had a Stage 2 sacral wound (pressure ulcer). (*Id*.; *see also* Doc. 25, Ex. A at 12). A Stage 2 sacral wound is typically superficial and presents as an abrasion or blister. (Doc. 23, Caswell Decl. ¶ 10). At that time, Seymour was admitted to RMC for other reasons. (*Id*.). The wound was treated effectively, and Seymour continues to have monthly wound assessments. No other wounds have been detected. (*Id*.; *see also* Doc. 25, Ex. A at 4-11).

## II. DISCUSSION

To establish entitlement to a preliminary injunction, a movant must demonstrate:

(1) a substantial likelihood of success on the merits of the underlying claim;

(2) a substantial likelihood of suffering irreparable injury if the injunction is not granted;

(3) that the threatened injury to the plaintiff outweighs any injury the nonmovant might suffer from the injunction; and

(4) the injunction would not disserve the public interest.

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1254 (11th Cir. 2020); *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995) (discussing the requirements for issuing a TRO). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.,* 887 F.2d 1535, 1537 (11th Cir. 1989); *Bloedorn v. Grubs*, 631 F.3d 1218, 1229 (11th Cir. 2011) (emphasizing that a temporary restraining order or "preliminary injunction in advance of trial is an extraordinary remedy").

"A showing of irreparable injury is 'the sine qua non of injunctive relief.'" *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)). "[T]he asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" *Siegel*, 234 F.3d at 1176 (quoting *City of*

*Jacksonville*, 896 F.2d at 1285). "[T]he absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel*, 234 F.3d at 1176 (citations omitted).

Seymour argues that he is entitled to a preliminary injunction because each relevant factor weighs in his favor. Regarding a substantial likelihood of success on the merits of his claims, Seymour states that he "has a great likelihood of success" because "[t]he law prohibits discrimination against a qualified ADA individual." (Doc. 6 at 2). Regarding irreparable harm, Seymour contends that "[d]enial of reasonable ADA accommodations that prevent sores are injurious to mind and body [and] constitutes irreparable harm." (*Id*. at 1).

To state a claim of discrimination under Title II of the ADA, a claimant must prove:

> (1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Bircoll v. Miami-Dade Cnty*., 480 F.3d 1072, 1083 (11th Cir. 2007).[2]

This court need not assess the likelihood that Seymour will succeed on the merits of his disability discrimination claims, because he has not established that

---

[2] The standard for determining liability under the RA is the same as the standard under the ADA. *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

there is a substantial likelihood he will suffer irreparable injury if his proposed preliminary injunctive relief—forcing the FDC to provide pediatric diapers—is not granted. Seymour contends that a violation of the ADA always constitutes irreparable harm. The Eleventh Circuit, however, has rejected that proposition. *See C.B. v. Bd. of Sch. Comm'rs of Mobile Cnty., Ala.*, 261 F. App'x 192, 194 (11th Cir. 2008) (rejecting plaintiff's argument that irreparable harm should be presumed when an ADA violation is alleged; stating that "unless a statute clearly mandates injunctive relief for a particular set of circumstances, the courts are to employ traditional equitable considerations (including irreparable harm) in deciding whether to grant such relief"); *see also Siegel*, 234 F.3d at 1177 (recognizing that no authority from the Supreme Court or the Eleventh Circuit has held that the irreparable injury needed for a preliminary injunction can be presumed for a substantially likely violation of constitutional rights) (collecting cases)).

Seymour's allegation—that he "requires the pediatric diapers to avoid periodic and reoccurring open sores caused by the ill-fitting adult diapers and the leakage of fecal matter" (Doc. 1 ¶ 6),—is refuted by his medical records showing that he has not developed sores from leakage of feces. The "sore" he did suffer—a pressure ulcer in February 2019 from not repositioning himself—was treated effectively.

Because Seymour fails to establish at least one of the requirements for preliminary injunctive relief—arguably the most important one—his motion for a

preliminary injunction should be denied. *See Siegel*, 234 F.3d at 1176 ("Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper.").

### III.   CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. Plaintiff's motion for a preliminary injunction (Doc. 6) be **DENIED**.

At Panama City, Florida, this 6th day of August, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**