UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

GARY LEE SEYMOUR,

    Plaintiff,

v.                                Case No. 5:20-cv-214-TKW/MJF

RICKY D. DIXON,[1]

    Defendant.
_____/

**ORDER and**
**REPORT AND RECOMMENDATION**

This prisoner case, filed under Title II of the Americans with Disabilities Act of 1990 ("ADA"), and Section 504 of the Rehabilitation Act of 1973 ("RA"), is before the court upon Defendant's motion to dismiss. Doc. 22. Plaintiff has not filed a response in opposition. For the reasons set forth below, the undersigned recommends that Defendant's motion to dismiss be denied.[2]

---

[1] Plaintiff's complaint names as the Defendant Mark S. Inch in his official capacity as the Secretary of the Florida Department of Corrections ("FDC"). Doc. 1 at 2, 5. Ricky D. Dixon succeeded Mark Inch as Secretary of the FDC, and is automatically substituted as the Defendant. *See* Fed. R. Civ. P. 25(d); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[W]hen officials sued in [their official] capacity in federal court die or leave office, their successors automatically assume their roles in the litigation.").

[2] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters and motions for

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Gary Lee Seymour is a Florida prisoner proceeding *pro se* and *in forma pauperis*. Seymour is suing the Secretary of the FDC in his official capacity, claiming that prison officials are discriminating against him on the basis of his disability—in violation of the ADA and RA—by refusing to provide him with appropriately-sized diapers for his paraplegia and bowel incontinence. As relief, Seymour seeks injunctive relief and damages. Doc. 1.

The Defendant ("the Secretary") moves to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that: (1) Seymour's complaint fails to state a plausible individual-capacity claim against the Secretary based on *respondeat superior* or vicarious liability; and (2) the complaint fails to state a plausible official-capacity claim against the Secretary under the ADA and RA. Doc. 22.

On August 6, 2021, the undersigned ordered Seymour to respond to the Secretary's motion to dismiss by September 7, 2021. Doc. 27. Seymour did not respond to the motion to dismiss, and has not responded to the undersigned's October 15, 2021 order requiring him to show cause why the motion to dismiss

---

injunctive relief. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

should not be deemed unopposed. *See* Doc. 33. It appears, though, that Seymour's address changed sometime between August 20, 2021, and the present.[3]

## II. ALLEGATIONS OF SEYMOUR'S COMPLAINT

Seymour is a paraplegic with bowel incontinence. Doc. 1 at 5, ¶ 3. Prior to entering the prison system, Seymour "receiv[ed] pediatric diapers as a treatment reg[i]men for bowel incontinence." *Id*. When Seymour entered the FDC in February 2014, medical staff at the Central Florida Reception Center continued to provide him with pediatric diapers (Pampers Cruisers size 6). *Id*. ¶ 4. In March 2014, Seymour was transferred to Gulf CI where he was provided Huggies Little Movers size 5 for approximately one year. *Id*. ¶ 5. Medical staff then switched Seymour to adult diapers. *Id*. ¶ 5. The adult diapers were too large for Seymour's frame and leaked fecal matter onto his bedding and clothing. *Id*.

In April 2019, while confined at Suwannee CI, Seymour received Huggies Snug 'n Dry size 6 diapers. *Id*. ¶ 8. Later, at Century CI, Seymour was provided Pampers. *Id*. ¶ 10.

In June 2020, Seymour was transferred from Century CI to the Northwest Florida Reception Center ("NWFRC"). *Id*. ¶ 10. A security prison official at the

---

[3] Seymour was confined at the Reception and Medical Center at the time of his last filing on August 20, 2021. *See* Doc. 29. The Florida Department of Corrections Offender Network indicates that Seymour now is confined at the Northwest Florida Reception Center. *See* www.dc.state.fl.us/offenderSearch. There is no indication of the date he was transferred.

NWFRC confiscated Seymour's box of Pampers from his personal property. *Id*. Medical staff at the NWFRC provided Seymour with adult diapers, but according to Seymour, adult diapers are too large for his frame and cause feces to leak onto his bedding and clothing. *Id*. ¶ 6. The resulting odor "causes plaintiff to frequently miss chow and has been told to leave the law library, chapel." *Id*. ¶ 9. In addition, according to Seymour, "the ill-fitting adult diapers and the leakage of fecal matter" cause "periodic and reoccurring open sores" which, if infected, could put him "in a life threatening situation" because he has cancer. *Id*. ¶¶ 6-7. Seymour filed this lawsuit on August 17, 2020, claiming that pediatric diapers (the Pampers or Huggies he previously was given) are necessary to avoid discrimination against him on the basis of his disability. *Id*. at 1 ¶ 1, 8.

### III. DISCUSSION

**A.     Standard for Addressing Motions to Dismiss**

Rule 12 of the Federal Rules of Civil Procedure authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The mere possibility that the defendant acted unlawfully is insufficient. *Id.*, 556 U.S. at 678; *see also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) (noting that a "pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, that is, "across the line from conceivable to plausible." *Id.*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678 (reiterating that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). A complaint also may be dismissed for failure to state a claim "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003); *see also Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *Jones v. Bock*, 549 U.S. at 215 (reiterating that principle).

In considering a motion to dismiss for failure to state a claim, the court accepts all well-pleaded factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1483 (11th Cir. 1994). Mere

"labels and conclusions" are not accepted as true. *Twombly*, 550 U.S. at 555; *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (explaining that on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (holding that courts must follow the Supreme Court's "'two-pronged approach' of first separating out the complaint's conclusory legal allegations and then determining whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief.'" (quoting *Iqbal*, 556 U.S. at 679). Thus, a pleading that offers "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

B.   **Disability Discrimination Standard**

To state a claim of discrimination under Title II of the ADA, a claimant must prove:

> (1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007). An ADA claim may proceed on the theory that the defendant failed to reasonably accommodate the plaintiff's disability. *See Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212

n.6 (11th Cir. 2008); *Lonergan v. Fla. Dep't of Corr.*, 623 F. App'x 990, 992 (11th Cir. 2015).[4]

## C. Seymour's Complaint Does Not Purport to Assert an Individual-Capacity Claim Against the Former or Present Secretary

The Secretary argues that Seymour's complaint should be dismissed with prejudice because Seymour does not plausibly allege a basis for individual liability. Doc. 22 at 5-8. Seymour's complaint makes clear, however (and the Secretary acknowledges), that Seymour is suing the Secretary in his *official capacity only*, for violations of the ADA and RA. Doc. 1 at 2, 5, ¶ 1; Doc. 22 at 2, 3. That is not surprising given that "there is no individual capacity liability under Title II of the ADA or RA." *Badillo v. Thorpe,* 158 F. App'x 208, 211-12 (11th Cir. 2005); *Smith v. Rainey*, 747 F. Supp. 2d 1327, 1340 (M.D. Fla. 2010 ("It is settled that Title II of the ADA does not permit individual capacity suits.").

The Secretary is correct that Seymour's complaint includes an allegation that the Secretary was on notice of the ADA violations by virtue of Seymour's grievances, but that allegation relates to Seymour's statement that he exhausted his administrative remedies. Doc. 1 at 5, ¶ 2. Seymour's failure to plead an individual-capacity claim against the Secretary is not a basis to dismiss his complaint with

---

[4] The standard for determining liability under the RA is the same as the standard under the ADA. *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

prejudice. The Secretary's motion to dismiss on that ground, therefore, must be denied.

D.  **Seymour's Complaint States a Plausible Claim under the ADA and the RA Against the Secretary in His Official Capacity**

The Secretary argues that Seymour's allegations fail to state a plausible violation of the ADA or the RA. Doc. 22 at 8-10. The Secretary elaborates:

> The Plaintiff alleges that he is entitled to pediatric (Huggies or Pampers) diapers due to his small frame, is paraplegic, and wheelchair bound. Certainly, the Plaintiff, assuming his self-description is true for purposes of the Complaint, may be entitled to adult or even youth diapers if medical staff deems it medically necessary. But pediatric diapers?
>
> The Plaintiff's demand doesn't pass the smell test and fails to comport with common sense and reality. The Plaintiff does not provide his height, weight, and unless he has been diagnosed with dwarfism, which he does not allege, and is the size of the average five to six-year-old child, pediatric diapers are not a reasonable accommodation he is entitled to, irrespective of whether he was previously permitted to have them or not.

*Id*. at 9-10. The Secretary then notes that Seymour's underlying criminal conviction involves 83 counts of possession of child pornography. *Id*. at 10. Thus, the Secretary surmises, Seymour's request for pediatric diapers "appears to be rooted in a nonmedical reason." *Id*. at 10. The Secretary maintains that "[e]xtra small adult diapers, or perhaps youth size, would be more appropriate for a small-framed adult rather than pediatric diapers." *Id*.

Seymour's use of the term "pediatric diapers" does not render his claims implausible. Construed liberally, the term "pediatric diaper" can be interpreted to mean a youth diaper or any diaper smaller in size and more fitted than the "adult diaper" he presently is being provided. And in any event, Seymour states that he, in fact, was using "Pampers cruisers size 6" when he entered the custody of the FDC, and he identifies various prisons within the FDC that provided him with that type of diaper (Pampers cruiser size 6, Huggies Little Movers size 5, Huggies Snug n' Dry size 6) up until June 2020, when he arrived at the NWFRC. Doc. 1 at 5-6. Seymour's allegations, as a whole, "pass the smell test," and his use of the term "pediatric diapers" does not render his claims implausible.

Additionally, Seymour's allegations plausibly show that prison officials' offer of adult diapers does not give him meaningful access to the dining hall, law library and chapel. Seymour alleges that adult briefs are too large for his frame; that they leak fecal matter on bedding and clothing which causes a foul smell; and that the leakage and foul smell cause him to miss chow and to be excluded from the law library and chapel. This is sufficient to allege a claim of "failure to accommodate" a disability. *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 73 (2d Cir. 2016) (recognizing that if "[a]n accommodation . . . [is] so inadequate that it deters the plaintiff from attempting to access the services otherwise available to him," then it is not a "reasonable accommodation" (citation omitted)); *Alexander v. Choate*, 469

U.S. 287, 301–02 (1985) (recognizing that accommodations for an individual's disability are not "reasonable" for purposes of the ADA if they do not provide "meaningful access"—not just physical access—to the facility's services, programs or activities). The fact that the FDC frequently provided Seymour's proposed accommodation in the past suggests that the Secretary deemed this accommodation appropriate and reasonable despite the nature of Seymour's underlying criminal conviction.

In summary, Seymour's complaint states a plausible failure-to-accommodate claim under the ADA and the RA.

## IV. Conclusion

For the reasons set forth above, it is **ORDERED**:

1. The clerk of court shall change the docket to reflect that Ricky D. Dixon has been substituted as the Defendant.

2. The clerk of court shall mail a copy of this Report and Recommendation to Plaintiff at his address of record (the Reception and Medical Center) and to the address indicated for Plaintiff on the Florida Department of Corrections Offender Network (the Northwest Florida Reception Center, 4455 Sam Mitchell Drive, Chipley, Florida 32528-3501).

3. On or before **DECEMBER 30, 2021**, Plaintiff shall demonstrate his continued interest in this case by filing a Notice with the clerk of this

court confirming his address. Failure to do so likely will result in dismissal of this case for failure to prosecute and failure to comply with an order of this court.

In addition, the undersigned respectfully **RECOMMENDS** that:

1. Defendant's motion to dismiss, Doc. 22, be **DENIED**.

2. This case be returned to the undersigned for further pretrial proceedings.

At Pensacola, Florida, this <u>10th</u> day of December, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**