IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

GARY LEE SEYMOUR,

    Plaintiff,

v.                                                       CASE NO.:  5:20-cv-214-TKW-MJF

RICKY D. DIXON, SECRETARY,
FLORIDA DEPARTMENT OF
CORRECTIONS,

    Defendant.
_____/

## MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant RICKY D. DIXON, in his official capacity as Secretary of the Florida Department of Corrections, (hereinafter 'FDC') by and through undersigned counsel, and pursuant to Rule 56, Federal Rules of Civil Procedure, hereby moves for the entry of an Order granting Summary Judgment in his favor in this cause. Defendant alleges the following: (a) That there is no genuine issue as to any material fact; and (b) Defendant is entitled to a judgment as a matter of law.  Grounds for this Motion are more fully demonstrated in the accompanying memorandum of law and exhibits attached hereto.

## BACKGROUND AND PROCEDURAL HISTORY

1. The Plaintiff, Gary Lee Seymour (the "Plaintiff" or "Seymour"), DC# T77153, is an inmate in the custody of the Florida Department of Corrections and

...

serving a fourteen-year sentence for eighty-three (83) convictions for possession of child pornography. His estimated release date is December 27, 2028.[1]

2. On August 17, 2020, the Plaintiff filed his Complaint for Violation of Civil Rights alleging violations of Americans with Disabilities Act (hereinafter 'ADA') and Section 504 of the Rehabilitation Act (hereinafter 'RA'). [Doc. 1] [2]

3. On September 22, 2020, the Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction. [Doc. 6]

4. On July 23, 2021, former Secretary Inch filed his Motion to Dismiss the Complaint. [Doc. 22]

5. On July 29, 2021, Inch filed his Supplemental Response in Opposition to Plaintiff's Motion for Temporary Restraining Order. [Doc. 25]

6. On Aug. 6, 2021, the Magistrate Judge issued his Report and Recommendation that Plaintiff's Motion for Preliminary Injunction be denied. [Doc. 26]

7. On Oct. 1, 2021, the Court entered its Order adopting the Report and Recommendation that Plaintiff's Motion for Preliminary Injunction be denied. [Doc. 32]

8. On Dec. 10, 2021, the Magistrate Judge issued his Report and Recommendation that Defendant's Motion to Dismiss be denied. [Doc. 35]

---

[1] FDC's Offender Information Search, http://www.dc.state.fl.us/offendersearch/, Seymour, Gary L. DC# T77153.
[2] The original Defendant was Mark Inch, former Secretary of FDC. Since this case has been construed as an 'official capacity' action, Inch has been replaced by the current FDC Secretary, Ricky Dixon.

9. On Dec. 30, 2021, the Court adopted that Report and Recommendation, and denied the Defendant's Motion to Dismiss. [Doc. 38]

10. On Jan. 20, 2022, Defendant filed his Answer to the Complaint. [Doc. 44]

11. This action is thus now at issue and ripe for ruling on Motion for Summary Judgment.

## PLAINTIFF'S ALLEGATIONS

In his Complaint, the Plaintiff alleges that he has a small frame, is paraplegic in a wheelchair, is 100% disabled, and that he is not receiving pediatric diapers for bowel incontinence. [Doc. 1, pg. 5] After being convicted for the above-referenced offenses, on February 19, 2014, the Plaintiff began his incarceration with the FDC at Central Florida Reception Center (CFRC) with two boxes of pampers cruisers size 6, and said diapers were being continuously provided "but were being harder to receive." Id.  In March 2014, Plaintiff was transferred to Gulf Correctional Institution and provided with Huggies Little Movers size 5 for approximately 12 months. Id.  Thereafter, the medical staff took away his Huggies, and allegedly told him that he needed to get "big boy" diapers, and provided him with adult diapers that are too large for Plaintiff's small frame. Id. At pgs. 5-6.

Apart from being a paraplegic, the Plaintiff alleges he has cancer and other serious medical conditions, and that if he develops sores, an infection could place him in a life-threatening situation. Id.  Although the Plaintiff's timeline is vague,

3

presumably between March 2015 through April 2019, he was receiving adult diapers, until he received three boxes of Huggies in April 2019 when he was transferred from Suwannee Correctional Institution to Northwest Florida Reception Center ('NWFRC'). Id.

In June 2020, Sgt. Stevens at NWFRC took the Plaintiff's pediatric diapers. Id. The Plaintiff alleges that he is "being denied programs, services, and activities due to the ill-fitting adult diapers leaking" causing him to miss his meals and being told to leave the law library and chapel. Id.

Plaintiff sues the Secretary in his official capacity only. Id. at 2. For relief, he seeks declaratory and injunctive relief to provide him with pediatric diapers, and compensatory, punitive, and nominal damages totaling $275,000. Id. at 8.

## STATEMENT OF MATERIAL UNDISPUTED FACTS[3]

1. Plaintiff has a pass for a permanent wheelchair. He has been diagnosed as paraplegic. Paraplegia is when there is paralysis of the lower extremities (unable to move) typically due to spinal injury or disease. [Exs. A, B][4]

2. The medical records document that Plaintiff is incontinent of feces and has an ileal conduit which diverts urine into a bag/pouch. He currently has a pass/order

---

[3] References to CM/ECF documents will be to the specific filed Document number, i.e. [Doc. _]. References to the Exhibits attached hereto will be to the Exhibit number, i.e. [Ex. _].
[4] Ex. A is Kellie Caswell's 'Declaration.' Ex. B is the 'Review of Medical Records Pertaining to (Plaintiff) referenced in her 'Declaration.'

to issue him one (1) package of small diapers per week. This order was written on 01/28/2022. [Id.]

3. Medical records document that Plaintiff hoarded diapers and supplies, including some Huggies diapers. On September 17, 2014, the ARNP documented "he is clearly not using them on a daily basis". According to the weight range on a Huggies package, a Size 6 pediatric diaper generally has a weight range of approximately 35 lbs. and a Size 5 has a weight range of 27 pounds. [Id.]

4. On March 8, 2015, Plaintiff was measured due to his requests for Mickey Mouse diapers. His waist was 28.25". When he requested the diapers, he was not wearing any brief, diaper, or underwear, according to the documentation. [Id.]

5. Plaintiff was offered the smallest brief (waist size 20" to 32") but he refused. [Id.]

6. Plaintiff returned to the supply window on March 22, 2015, asking for pediatric diapers. It was requested that he obtain a medical pass and return for his supplies. The documentation states that he never returned with a pass. [Id.]

7. Plaintiff was measured on January 21, 2016, his waist was 29". According to the Inpatient History and Physical completed on June 2, 2021, he weighed 116 pounds and is 5'10". [Id.]

8. His waist was measured again on 05/09/2022 and was 25". He was weighed most recently on 06/09/2022 and weighed 123 pounds. [Id.]

9. According to the medical records Nurse Caswell reviewed, there is not a documented medical reason for Plaintiff to need pediatric diapers. According to his last weight and measurement, the small brief that he has available should fit his frame appropriately. [Id.]

10. Plaintiff was seen in sick call on 06/08/2022 and the practitioner documented that the diaper he was wearing fit appropriately. [Id.]

11. In his Complaint [Doc. 1], Plaintiff alleges that he is required to have pediatric diapers to avoid periodic recurring open sores by ill-fitting adult diapers. [Id.]

12. In the medical records that Nurse Caswell reviewed, it was documented many times that Plaintiff was able to change positions and turn himself (this is done when in bed or in a chair to avoid ulcers due to pressure) and he had multiple wound assessments where no wounds were documented. [Id.]

13. On February 19, 2021, Plaintiff did have a Stage 2 sacral wound. A Stage 2 wound (pressure ulcer) is typically superficial and presents as an abrasion or blister. [Id.]

14. At that time, he was admitted to RMC for other reasons There were

additional wound assessments completed after this date, and no wounds were present. [Id.]

15. Plaintiff's skin is ordered to be checked monthly. His last skin check was on 06/02/2022 where there was no documentation of skin redness or breakdown. His Braden scale was 16, which indicates he is at mild risk for skin breakdown. [Id.]

## MEMORANDUM OF LAW

**I.  Standard for Summary Judgment.**

Summary judgment is proper if the pleadings and sworn statements show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Rule 56(c), Fed. R. Civ. P.; Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).  After the movant brings evidence to demonstrate that lack of a case for each element of the claim(s), the nonmovant must provide evidence to dispute each element, id. at 322, where all reasonable inferences, not implausible inferences, are made in that party's favor.  Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002).  To create an issue of fact for trial sufficient to defeat a well-support summary judgment motion, the non-movant's evidentiary material must consist of more than conclusory, uncorroborated allegations from an affidavit or deposition.  West v. Higgins, 346 Fed. Appx. 423, 425 (11th Cir. 2009) (unreported op.) (citing Early v. Champion Int'l Corp., 907 F.

2d 1077, 1081 (11th Cir. 1990)). For the factual issues to be genuine, they must have a real basis in the record, and cannot be based merely on unsupported factual allegations. *Earley*, 907 F.2d at 1081.

The Supreme Court has further stated that if "two parties tell different stories [where one] is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769 (2007); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2548 (1986); *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013). Ultimately, "[t]he nonmovant need not be given the benefit of every inference but only of *every reasonable* inference." *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988) (emphasis added).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986), the U.S. Supreme Court, in pertinent part, stated:

> "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a **genuine** issue for trial… there is no issue for trial unless there is **sufficient** evidence favoring the nonmoving party for a jury to return a verdict for that party." (Emphasis added).

At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some

metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Liberty Lobby, supra* at 247-248.  "The mere scintilla of evidence in support of the [non-movant's] position will be insufficient.  *Id.* at 252.

II.     **Plaintiff Does Not Meet the Requirements to Prove a Claim Pursuant to the Americans with Disabilities Act and the Rehabilitation Act.**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. &12132.  Federal regulations implementing Title II require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program or activity." 28 C.F.R. &35.130(b)(7)(I).  See, e.g., Alexander v. Choate, 469 U.S. 287, 300-01 (1985) (refusing to make reasonable accommodations, including making changes to applicable rules or policies, when necessary, is

9

tantamount to denying access to a covered program or service). And it is well settled that Title II of the ADA applies to inmates in state prisons. See, Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 209, 213 (1998).

Under the ADA and RA, and in order to establish a prima facie case, the Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by a public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of his disability. Bircoll v. Miami–Dade County, 480 F.3d 1072, 1083 (11th Cir.2007). An ADA claim may proceed on the theory that the Defendant failed to reasonably accommodate the Plaintiff's disability. See Schwarz v. City of Treasure Island, 544 F.3d 1201, 1212 n. 6 (11th Cir.2008); Lonergan v. Florida Dept. of Corr., 623 Fed. Appx. 990, 992 (11th Cir. 2015). The standard for determining liability is the same under Section 504 of the Rehabilitation Act. See, Siskos v. Secretary, Department of Corrections, 817 Fed. Appx. 760 (11th Cir. 2020).

### III. Plaintiff Cannot Recover Compensatory or Punitive Damages Under the ADA.

"In order to recover compensatory damages under the [ADA], a plaintiff must demonstrate 'intentional discrimination or bad faith.'" Badillo v. Thorpe, 158 Fed. Appx. 208, 214 (11th Cir. 2005). "In other words, 'good faith attempts to pursue legitimate ends are not sufficient to support an award of compensatory damages

under the ADA.'" *Id*. at 214. Punitive damages are not recoverable under Title II of the ADA. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).

In this case, Plaintiff is not entitled to compensatory damages. There has been no intentional discrimination or bad faith on the part of Defendant, as Plaintiff has been afforded several accommodations, including adult diapers to help him accommodate his incontinence issues. *See Exs. A, B. See, also*, *Walker v. Florida*, 2014 WL 1017933, *4 (N.D. Fla. 2014) (finding that several attempted accommodations – though not what the Plaintiff was asking for – demonstrated the lack of bad faith). As a result, Plaintiff's claims for damages under the ADA must fail.

**IV.  Defendant has Made Reasonable Accommodations to Accommodate Plaintiff's Disability.**

A "qualified individual with a disability" is defined under the ADA as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. &12131 (2) (1990). For purposes of the ADA, a disability is: "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an

11

impairment; or (C) being regarded as having such an impairment. 42 U.S.C. &12102(2) (1990).

When evaluating whether an impairment substantially limits a major life activity, courts consider: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." Gordon v. E.L. Hamm & Assoc., Inc., 100 F. 3d 907, 911 (11th Cir. 1996). However, "[a] physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA." (Id.)

Even assuming that Plaintiff is a 'qualified individual with a disability', his claim should fail in light of the 'reasonable accommodation' which Defendant has made to accommodate his disability. As demonstrated in the Declaration of Kellie Caswell, RN, and Legal Nurse Consultant for FDC, she has reviewed Plaintiff's medical records and concluded that "…there is not a documented medical reason for Mr. Seymour to need pediatric diapers. According to Mr. Seymour's last weight and measurement, the small brief that he has available should fit his frame appropriately. Mr. Seymour was seen in sick call on 06//08/2022 and the practitioner documented that the diaper he was wearing fit appropriately." (Ex. A, pg. 2, parag. 9.)

And as to Plaintiff's allegations that he needs pediatric diapers to avoid periodic recurring open sores, Nurse Caswell states: "…it was documented many

times that Mr. Seymour was able to change positions and turn himself…and he had multiple wound assessments where no wounds were documented." (Ex. A, pg. 2, parag. 10).

Nurse Caswell further describes that Plaintiff's medical records document that he has 'hoarded' diapers and supplies; was not using Huggies on a daily basis; and has refused the smallest brief size available. (Id., pg. 2, parags. 7, 8.)

Thus, the evidence presented herewith demonstrates that Defendant has fulfilled his legal obligation under the ADA and RA to offer Plaintiff 'reasonable accommodation' to his disability, but Plaintiff has refused to avail himself of that accommodation. Summary judgment is thus appropriate for Defendant herein.

Respectfully Submitted,

**ASHLEY MOODY
ATTORNEY GENERAL**

*/s/ Joe Belitzky*
Joe Belitzky
Senior Assistant Attorney General
Florida Bar No. 217307
Office of the Attorney General
The Capitol, Suite PL-01
Tallahassee, Florida, 32399
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
Joe.Belitzky@myfloridalegal.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF and furnished by U. S. Mail on July 14, 2022 to: **Gary L. Seymour, DC# T77153,** Reception Medical Center, PO Box 628, Lake Butler, FL 32054.

/s/ Joe Belitzky
Joe Belitzky