UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

GARY LEE SEYMOUR,

    Plaintiff,

v.                                    Case No. 5:20-cv-214-TKW/MJF

RICKY D. DIXON,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Gary Seymour, a Florida prisoner proceeding *pro se*, has filed a complaint against the Secretary of the Florida Department of Corrections under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132 ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"). Doc. 1. The Secretary moves for summary judgment. Doc. 54. Seymour has responded in opposition to the motion. Doc. 60. For the reasons set forth below, the undersigned recommends that the Secretary's motion for summary judgment be denied.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters and motions for injunctive relief. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

## I. Background and Procedural History

Seymour is paraplegic and uses a wheelchair. He is an inmate of the Florida Department of Corrections ("FDC") currently confined at the Northwest Florida Reception Center ("NWFRC"). Seymour initiated this action on August 17, 2020, by filing a complaint against the Secretary of the FDC in his official capacity ("the Secretary"). Seymour claims that prison officials are discriminating against him on the basis of his disability by failing to reasonably accommodate his bowel incontinence. Seymour seeks injunctive relief and damages. Doc. 1.

The Secretary asserts that he is entitled to summary judgment on the issue of liability because the FDC is reasonably accommodating Seymour's disability. The Secretary asserts that he is entitled to summary judgment on the issue of damages because the FDC's attempt to accommodate Seymour's disability precludes a finding of bad faith or intentional discrimination. Doc. 54. In response, Seymour maintains that there are genuine disputes of material fact. Doc. 60.

## II. Summary of Material Facts

The material facts set forth below are drawn from the following sources: (1) Seymour's verified complaint, Doc. 1;[2] (2) the unobjected-to evidentiary materials

---

[2] "A sworn complaint constitutes summary-judgment evidence, just as if the same information had been set out in a declaration." *Gaffney v. Warden, Taylor Corr., Inst.*, No. 20-13572, 2022 WL 18381, at *1 (11th Cir. Jan. 3, 2022); *Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020) (crediting "specific facts" pled in

attached to the Secretary's motion for summary judgment, Doc. 54, Exs. A-B; (3) the unobjected-to evidentiary materials attached to Seymour's response, Doc. 60, Seymour Decl., Oliver Decl., and Exs. A-G; (4) Seymour's medical records, Doc. 25-1 and Doc. 37; and the declarations of Inmates Edwards, Place, Adams, Raymond, Aron and Person to the extent they are based on personal knowledge, Doc. 42. When the parties offer conflicting accounts of the facts in question, the court "sets forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff." *See Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005). Matters stated as "facts" for purposes of summary judgment review may not be the actual facts. *See Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

Seymour is paraplegic with bowel incontinence and has "no feeling" from the waist down. Doc. 1 ¶ 3; Doc. 54-1, Caswell Decl. ¶¶ 5-6. Prior to entering the prison system, Seymour "receiv[ed] pediatric diapers as a treatment reg[i]men for bowel incontinence." Doc. 1 ¶ 3.

When Seymour entered the FDC in February 2014, medical staff at the Central Florida Reception Center continued to provide him with youth or pediatric diapers

---

*pro se* prisoner's sworn complaint when considering his opposition to summary judgment); *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) ("Plaintiff alleged specific facts in his sworn complaint and they were required to be considered in their sworn form.").

(Pampers Cruisers size 6). *Id*. ¶ 4. In March 2014, Seymour was transferred to Gulf CI where he was provided Huggies Little Movers size 5 diapers. *Id*. ¶ 5.

From 2015 to the present, Seymour has at times been provided youth or pediatric-sized diapers, and at other times provided adult size Small diapers. *See* Doc. 1 ¶¶ 5, 8, 10; Doc. 37, Ex. A; Doc. 25-1 at 21, 32-33; Doc. 60, Ex. F at 2-3, 7-8. When Seymour has been provided adult size Small diapers, they have leaked feces through the waist and leg openings because they are too large for Seymour's frame. Doc. 60, Seymour Decl. & Exs. B, E, F.

On January 8, 2020, while Seymour was confined at NWFRC, a clinician wrote Seymour a 1-year medical pass for "pediatric diapers (pampers, huggies, Luvs)," but Seymour was not provided them. Doc. 54, Seymour Decl. ¶ 10; Doc. 37, Ex. A. On April 14, 2020, while confined at Century Correctional Institution, a clinician ordered that Seymour receive "Small adult or Large pediatric diapers." Doc. 60, Ex. E at 1. Seymour was provided Pampers (pediatric diapers). Doc. 1 ¶ 10.

In June 2020, Seymour transferred back to NWFRC. Doc. 1 ¶ 10. He arrived with one box of Pampers that had been provided by Century CI. *Id*. A security official at NWFRC confiscated the box of Pampers. *Id*.

On June 25, 2020, Seymour submitted a sick-call request stating that the adult size Small diapers he was being provided were too large and leaked feces. Doc. 60, Ex. E at 6. On July 8, 2020, the Chief Health Officer at NWFRC (Dr. Benjamin)

noted that Seymour "needs smaller diapers." Doc. 60, Ex. F at 11. After not receiving smaller diapers, Seymour complained again—through another sick-call request on July 19, 2020—that the adult size Small diapers were too large and leaked feces. *Id*. at 12. Seymour was assessed by a nurse in sick call on July 21, 2020. *Id*. Neither party has described the result of that visit or provided documentation of it.

Seymour filed this lawsuit on August 17, 2020, while still confined at NWFRC. Doc. 1 at 2. Seymour alleges that the adult diapers he is being provided are too large and leak fecal matter. Seymour asserts that he has been told to leave the chow hall, chapel, law library, and other places due to the foul odor from the diapers leaking. Doc. 1 ¶ 9; Doc. 60, Seymour Decl. ¶ 7. In addition, Seymour "is constantly being humiliated, degraded by not only staff but inmates alike" due to the "foul odor and mess" caused by the improperly-sized diapers. Doc. 60, Seymour Decl. ¶ 12. Seymour also alleges that the ill-fitting diapers cause him "periodic and recurring open sores" which pose a risk of infection. Doc. 1 ¶¶ 6-7.

Since the filing of Seymour's complaint, the diaper issue still has not been resolved. On August 27, 2021, while Seymour was confined at the Reception and Medical Center, he requested "XXSM or youth diapers." Doc. 60, Ex. B (Grievance dated 8/27/21). His request was denied with the explanation: "As told to you before the Adult Small diapers were the diapers you were allowed to get." *Id*.

On November 12, 2021, after Seymour transferred back to NWFRC, he requested a pediatric diaper. Doc. 60, Ex. B (Grievance dated 11/12/21). The medical department responded: "We can only order items on our formulary." *Id*.

On February 7, 2022, Seymour's medical provider at NWFRC (Dr. Benjamin) assessed Seymour and determined that he would benefit from "extra small" diapers to prevent fecal leakage. Doc. 54-2, Ex. B at 2; *see also* Doc. 60, Ex. B at 4. On February 25, 2022, Seymour submitted an informal grievance complaining that he had not been provided the Extra Small diapers Dr. Benjamin ordered. Doc. 60, Ex. B at 4. The medical department denied the grievance, stating: "Records indicate you have an appointment in the very near future and can address these concerns at that time. Your supplies were ordered." *Id*.

On June 3, 2022, Seymour wrote the following inmate request to the medical department at NWFRC:

> I have repeatedly spoken to you relating to these diapers leaking to no avail. This issue is becoming serious in my dorm with fellow inmates. I am still losing weight and I know my waist and thighs are getting smaller. Please, just provide me with the pediatric size diapers so that they don't leak. The leakage occurs mainly around the legs and allows fecal matter to get on bedding and clothes causing a substantial mess and odor. I have had multiple arguments with other inmates and staff about this as I am unable to control the leakage problem due to the inability to get the diapers I know I need. If you are unable or unwilling to get the pediatric diapers then authorize me to have family or friends have them sent to me. I understand the wait time for the diapers to arrive once ordered, however, I have not been informed that the ordering process has even begun.

Doc. 60, Ex. B (Grievance dated 6/3/22). Seymour was seen in sick call on June 8, 2022, where he asked about the status of his request for pediatric diapers. Doc. 54-2, Ex. B at 1. Seymour was informed that "youth/extra small diapers were appropriate size and that pediatric diapers have not been approved." *Id*. On June 13, 2022, the medical department responded in writing to Seymour's inmate request for pediatric diapers:

> This issue was addressed and escalated as per policy for approval. Unfortunately, it was denied and is currently out of our hands. You will need to access sick call to be re-evaluated. You have upcoming appointments for supplies.

*Id*.

On August, 29, 2022, a doctor at the Reception and Medical Center (Dr. Esdra Jean Baptiste) wrote Seymour a 1-year medical pass for "1 pack pediatric sized diapers per week." Doc. 60, Ex. A. As of the date of Seymour's summary judgment response on September 13, 2022, Seymour still has not been provided pediatric diapers. Doc. 60, Seymour Decl. ¶ 7.

While confined at NWFRC, Seymour has been ordered to leave the chapel, chow hall and law library due to fecal leakage and smell from wearing adult diapers that are too large for him and thus ineffective at containing his feces. Doc. 1 ¶ 9; Doc. 42, Edwards Decl. ¶¶ 4-5, Place Decl. ¶¶ 3-4, Adams Decl. ¶ 4, Raymond Decl. ¶ 2, Person Decl. ¶¶ 4-6. Seymour also has been humiliated by prison staff and

threatened with confinement due to fecal leakage and smell. *Id*. Seymour is able to contain his feces when he wears pediatric-sized diapers that have smaller leg openings. Doc. 1 ¶ 6; Doc. 60, Seymour Decl. ¶ 8.

### III.  SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A fact is "material" if it could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

### IV.  STANDARD GOVERNING CLAIMS UNDER THE ADA AND RA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A public entity also is required to "make reasonable modifications in policies, practices, or procedures

when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7); *see also Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir 2008); *Lonergan v. Fla. Dep't of Corr.*, 623 F. App'x 990, 992 (11th Cir. 2015).

To state a claim of discrimination under Title II of the ADA, a claimant must prove:

> (1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2007).

A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2). The term "public entity" includes state prisons. *See Pennsylvania Dep't. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

The standards for determining liability under the ADA and the RA are the same, and courts "rely on cases construing Title II and [section 504] interchangeably." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019) (alterations adopted) (internal quotation marks omitted). The same is true of the standards governing the recovery of damages under the ADA and RA. *See Ingram v. Kubik*, 30 F.4th 1241, 1257-59 (11th Cir. 2022) (discussing *Barnes v. Gorman*, 536 U.S. 181, 184-85 (2002)). "To get damages [under the ADA or RA] a plaintiff must clear an additional hurdle: he must prove that the entity that he has sued engaged in intentional discrimination, which requires a showing of 'deliberate indifference.'" *Silberman*, 927 F.3d at 1134 (citation omitted).

## V. Discussion

Seymour asserts that due to his disability-related bowel incontinence and his small frame, he requires pediatric-sized diapers to contain feces and avoid leakage onto his clothing. Seymour asserts that prison medical officials are discriminating against him by refusing to provide pediatric-sized diapers—even when ordered by a physician—and instead providing him adult size Small diapers that are too large and leak feces. As a result, Seymour maintains, he is the subject of scorn and harassment by inmates and prison officials, and he is denied access to (and has been ordered to leave) the chow hall, law library, chapel and other places because he is unable to contain his feces. Seymour claims that prison officials' refusal to reasonably

accommodate his disability-related hygiene need constitutes "exclu[sion] from participation in or . . . deni[al of] the benefits of" the prison's "services, programs, or activities." 42 U.S.C. § 12132; *see also Yeskey*, 524 U.S., at 210 (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs).

The Secretary asserts that even assuming that Seymour is a "qualified individual with a disability," his ADA and RA claims fail "in light of the 'reasonable accommodation' which Defendant has made to accommodate his disability." Doc. 54 at 12. The Secretary relies on the declaration of Kellie Caswell, RN, BSN, who is a Legal Nurse Consultant for the FDC's Office of Health Services. Doc. 54-1, Ex. A. Nurse Caswell states in her declaration dated June 16, 2022, that "there is not a documented medical reason for Mr. Seymour to need pediatric diapers," and that a "small brief . . . should fit his frame appropriately." Doc. 54, Ex. A, Caswell Decl. ¶ 9.[3] Caswell bases her opinion on: (1) Seymour's waist measurement on May 9, 2022, which was 25"; (2) Seymour's weight of 123 pounds on June 9, 2022; and (3) a practitioner's note on June 8, 2022, that the diaper Seymour was wearing at sick call

---

[3] The Secretary notes that Seymour has at times been found to hoard medical supplies. *See* Doc. 54 at 5 ¶ 3; Doc. 54-1, Ex. A, Caswell Decl. at ¶ 7. However, the issue of *how* to supply Seymour with diapers so that they are not hoarded is different from the issue of *what size* diaper accommodates his bowel incontinence so that he can access all of the services available to other inmates (disabled and non-disabled).

fit appropriately. *Id.* ¶¶ 8-9. Nurse Caswell's summary of the June 8, 2022, practitioner's note states:

> Pt seen in sick call asking about the status of pediatric diapers request. Arrives sitting upright in w/c, wearing extra small youth diaper with a homemade cover. Not currently soiled. Informed patient per note 5/19/2022 that youth extra small diapers were appropriate size and that pediatric diapers have not been approved. Pt is not happy with this information and starts speaking about lawsuits Sick call prn.

Doc. 54, Ex. B at 1. The actual medical record supporting Nurse Caswell's summary has not been provided to this court. Nevertheless, the medical summary itself indicates that the "extra small youth diaper" Seymour was wearing was the "appropriate size," not an adult size Small brief. Additionally, after that June 8, 2022, sick-call visit, Seymour was prescribed "pediatric diapers" by a physician. Doc. 60, Ex. A.

Seymour has come forward with sufficient evidence to create genuine factual disputes as to whether prison officials are reasonably accommodating his disability-related bowel incontinence. Viewing the evidence in the light most favorable to Seymour, a reasonable jury could conclude that: (1) the adult size Small and Extra-Small diapers the FDC provides are too large and leak feces through the leg and/or waist openings which render them wholly ineffective for containing Seymour's feces; (2) in the past—and most recently on August 29, 2022—doctors prescribed pediatric diapers as necessary for effective feces containment; (3) the FDC is

refusing to provide pediatric diapers despite doctor's orders, despite having provided them in the past, and with knowledge that they are necessary for effective feces containment; (4) on at least one occasion Seymour was denied pediatric diapers for the stated reason that they are not on the formulary; and (5) the FDC's refusal to provide a pediatric-sized diaper necessary for Seymour to contain his feces deprives Seymour of an equal opportunity to benefit from the prison's services, programs and facilities.

Because genuine factual disputes exist on the issue of whether the FDC is "reasonably accommodating" Seymour's disability—which is the sole element argued in the Secretary's motion—summary judgment is improper. *See Lonergan*, 623 F. App'x at 994 ("[T]he failure of the prison to give the Plaintiff the treatment prescribed by his dermatologist is sufficient for the Plaintiff to plead a prima facie ADA claim."); *Frasca v. Fla. Dep't of Corr.*, No. 3:16- cv-1468, 2018 WL 3642275, at *4 (M.D. Fla. Aug. 1, 2018) (on motion to dismiss, finding that the plaintiff sufficiently alleged ADA and RA claims where plaintiff "sought the treatment that medical personnel prescribed" but prison officials refused to provide the prescribed treatment); *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 342 (11th Cir. 2012) ("[T]he task of determining whether an entity subject to the RA has provided appropriate auxiliary aids where necessary is inherently fact-intensive.").

The Secretary goes on to assert that Seymour cannot recover compensatory damages under the ADA, because "[t]here has been no intentional discrimination or bad faith on the part of Defendant, as Plaintiff has been afforded several accommodations including adult diapers to help him accommodate his incontinence issues." Doc. 54 at 11. The Secretary's argument is limited to the issue of discriminatory intent.

The summary judgment evidence create a triable factual issue on whether the refusal to provide Seymour pediatric-sized diapers constitutes deliberate indifference and thus intentional discrimination under the ADA and RA. Viewing the evidence in the light most favorable to Seymour, a reasonable jury could conclude that: (1) the Defendant knows that adult diapers are an ineffective accommodation for Seymour's disability-related bowel incontinence because they are too large to contain his feces; (2) the Defendant knows that pediatric-sized diapers are necessary to effectively accommodate his bowel incontinence; (3) the Defendant provided pediatric diapers in the past (as recently as 2020), but since then has refused to provide them; and (4) one of the reasons stated for denying Seymour pediatric diapers is that they are not on the formulary. The Defendant's apparent knowledge that Seymour requires pediatric-sized diapers to effectively contain his feces—and the Defendant's deliberate refusal to provide that accommodation and insistence on providing only an ineffective accommodation—satisfies the deliberate

indifference standard.[4] *See Liese*, 701 F.3d at 351-52 (applying the deliberate indifference standard to an RA claim for a hospital's failure to provide an appropriate auxiliary aid to a hearing-impaired patient and finding that triable issues of fact precluded summary judgment).

## VI. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. Defendant's motion for summary judgment, Doc. 54, be **DENIED**.

2. This case be returned to the undersigned for further pretrial proceedings on Plaintiff's disability-discrimination claims.

At Pensacola, Florida, this 17th day of October, 2022.

/s/ *Michael J. Frank*
Michael J. Frank
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the**

---

[4] The Secretary has not offered any other reason that would preclude Seymour from recovering compensatory damages.

**district court's order based on unobjected-to factual and legal conclusions.** ***See*** **11th Cir. R. 3-1; 28 U.S.C. § 636.**